The MAINE POTATO COUNCIL, Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 84–1–00141.

United States Court of International Trade.

Sept. 17, 1985.

Heron, Burchette, Ruckert & Rothwell, Thomas A. Rothwell, Jr., James M. Lyons and Alfred G. Scholle, Washington, D.C., for plaintiff.

Lyn M. Schlitt, Gen. Counsel, Michael P. Mabile, Asst. Gen. Counsel, U.S. Intern. Trade Com'n and Stephen A. McLaughlin, Washington, D.C., for defendant.

## OPINION AND ORDER

RESTANI, Judge:

Plaintiff, the Maine Potato Council, challenges as unsupported by substantial evidence and otherwise not in accordance with the law, the final negative injury determination by the United States International Trade Commission (ITC or Commission) involving imports of fall-harvested round white potatoes from Canada. *See Fall-Harvested Round White Potatoes from Canada*, 48 Fed.Reg. 57,381 (Inv. No. 731–TA–124 (Final), USITC Pub. No. 1463) (Dec. 29, 1983). On June 27, 1985, this court remanded certain issues to the ITC for further consideration. *Maine Potato Council v. United States*, 9 CIT ——, 613 F.Supp. 1237 (1985). Specifically, the Commission was instructed to: (1) explain how it treated the issue of quality differences between Canadian and Maine potatoes in finding no price suppression by reason of the imported potatoes and no underselling and how such findings led to the final

decision regarding injury, and (2) to state whether it finds that imports were a contributing cause of injury and how that finding relates to data on volume effects. The Commission subsequently reconsidered these issues in light of all the information of record and submitted additional findings to the court on July 25, 1985.[1]

For the following reasons, the court concludes that there is substantial evidence in the administrative record supporting the ITC's negative injury determination and that the determination is otherwise in accordance with the law.

■ First, it is the view of the court that where the Commission finds quality differences significant, it must account for such differences in its analysis. Nonetheless, the Commission persists in its view that perceived quality differences need never be quantified and cites as support *British Steel Corp. v. United States*, 8 CIT ——, 593 F.Supp. 405, 412 (1984). Plaintiffs in *British Steel* sought reversal of a finding of underselling, maintaining that costs associated with long lead times for deliveries of the imports offset the lower price of British steel. The court held that an adjustment to actual selling price for those particular cost factors was inappropriate largely because the costs varied according to numerous factors. *British Steel*, 593 F.Supp. at 412. Thus, *British Steel* did not involve quality differences, let alone consistently significant quality differences, and the discussion of costs related to underselling only, not to price suppression.

■ With the legal standard previously set forth in mind, the court must analyze the Commission's actions here. The Commission states that it did make allowances for quality differences in drawing its conclusions regarding price suppression and underselling, although it did not quantify the differences. Therefore, the remaining issue as to quality is whether the differences must be quantified in this case. Ini-

tially, it should be noted that no one has proposed a methodology for quantification here. Although the Commission's counsel once stated that quantification was possible, the Commission now states that quantification would be speculative because prices and margins of underselling fluctuate greatly and because the quality differences under discussion reflect consumer preferences only. These reasons are not highly persuasive. Fluctuations make quantification difficult, not impossible, and there remains the possibility that consumer perception influenced the price of potatoes throughout the chain of sale, as some of the lost sales questionnaire responses seem to indicate. The court concludes, however, that quantification is not necessary, in this instance, for other reasons noted by the Commission. The Commission indicates that there was a wide fluctuation in margins of overselling, which the Commission believes is incompatible with plaintiff's theory that consistent quality differences created a ceiling effect on prices. The Commission also indicates that it did not, in fact, find that consistent external quality differences were a significant factor here. Rather, the Commission found these quality differences to be marginal. Such views are not inconsistent with the evidence. Although some witnesses indicated Prince Edward Island potatoes were externally of superior quality, not all lost sales questionnaires reflect this view. Furthermore, those questionnaire respondents who expressed views on quality were not consistent as to which external quality factors—tint, uniform size, or lack of external defects—existed.[2] This data and the data on the margins of overselling indicates that the Commission did not proceed in an un-

lawful manner in failing to quantify the perceived external quality differences.

Second, the Commission has now clarified that it does not find the Canadian imports to be any contributing part of the cause of material injury to the domestic industry. In connection with this finding, the court asked for the Commission's views on volume effects on prices in general and specifically in connection with the Commission's econometric study. This study covered a twenty-five year period and indicated that there was a significant inverse correlation between domestic production and prices throughout that period. The study also showed an inverse correlation between imports and prices. The latter correlation, however, was not found to be significant with a certainty of 95 percent. Although neither courts nor administrative agencies need require this degree of certainty, this is often what statisticians require in order to find a significant correlation. *See Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 28 & n. 58 (D.C.Cir.1976); *see also* M. Hamburg, *Statistical Analysis for Decision Making* at 265 (2d ed. 1977). The Commission is not required to accept data which in the course of ordinary scientific research could properly be rejected.[3] Although one might draw a conclusion from the econometric study which supports plaintiff's view, the finding of the Commission that the study did not support a finding of material injury by reason of the imports may also be rationally drawn.[4] Consequently, the econometric study alone does not undermine the Commission's conclusion that the volume of imports did not contribute to injury.[5]

---

**2.** New Brunswick potatoes may also have benefited from more uniform grading requirements.

**3.** The Commission stated that the study shows that the price effect of the imports was *de minimis* or "not very great." The court understands the Commission to say that the study did not show any significant correlation between imports and prices.

**4.** The parties disagree as to whether econometric research focusing on the three years under

study would have supported plaintiff. The Commission, however, is not required to do any particular type of study and plaintiff did not submit any such study as part of the evidence before the Commission.

**5.** While plaintiff's argument that a certain increase in the volume of supply, regardless of the source, will lead to lower prices appeals to logic, plaintiff submitted no data to demonstrate this hypothesis. The econometric study was not designed to prove or disprove any correlation between overall supply and price and the court

Third, plaintiff again argues that the following conclusions are not supported by substantial evidence in the record: that financial losses by the domestic industry were greatest when the volume of imports was lowest and domestic production was highest; that high import penetration coincided with high prices and low domestic supply; and that price trends outside the northeast region were parallel with price trends within the region. Plaintiff points to evidence in the record, specifically, the Commission's focus on price movements rather than on absolute prices and its comparisons of crop years with fiscal or calendar years, which plaintiff argues demonstrates that the above conclusions are flawed, misleading or inaccurate. These arguments were not persuasive prior to remand and they are not persuasive now.

■ In reviewing an injury determination by the ITC, the "court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo....*'" *American Spring Wire Corp. v. United States,* 8 CIT ——, 590 F.Supp. 1273, 1276 (1984) (quoting *Penntech Papers, Inc. v. NLRB,* 706 F.2d 18, 22–23 (1st Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983) (quoting *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951))), *aff'd sub nom. Armco, Inc. v. United States,* 760 F.2d 249 (Fed.Cir.1985). It is within the Commission's discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence. *See* S.Rep. 249, 96th Cong., 1st Sess. at 74–75 (1979), U.S.Code Cong. &

Admin.News pp. 381, 460. The tables referred to by the Commission are problematic to the extent that comparisons are made between data collected during calendar years and data collected during crop years. However, adjusting the tables to compensate for the inconsistency in form, the court finds that the Commission could conclude that farm losses and price declines did not correlate with increases in import volume and market penetration. See the discussion of these findings in the court's previous opinion, *Maine Potato Council v. United States,* 613 F.Supp. 1237, 1240–41.[6] Likewise, it was not inappropriate for the Commission to rely on price movements, rather than on absolute prices, in concluding that price effects outside the region where imports primarily competed were parallel to price effects within the region. Transportation costs may indeed affect the absolute level of prices. Again, the Commission's findings in these areas were not unreasonable.

Finally, the court is disturbed that both the words of the Commission's original opinion and the words of its opinion upon remand were imprecise in their description of technical information and in regard to the law which is applicable to this case. Beyond additional demand upon legal and judicial resources, such imprecision gives the appearance that all evidence was not considered and analyzed by the ITC in the proper manner. The court, however, is convinced that the Commission's decision is supported by substantial evidence which was adequately analyzed. This does not mean that the evidence could not have supported another conclusion. It only means that substantial evidence supported the Commission's conclusions, which therefore must be sustained.

can think of several factors which might prevent any significant correlation between these variables. In any case, the court is not willing to disregard the expert opinion of the agency with regard to causation without data demonstrating that substantial evidence is lacking.

**6.** Plaintiff suggests that the Commission's conclusions are not supported by substantial evidence because statistics on one farmer, which

were inconsistent with the statistics on the other farmers, were included in the data cited by the Commission. The suggestion that this data be excluded is unacceptable, however, since removing this data would result in eliminating one-eighth of the survey sample. The court believes that eliminating such a substantial amount of the survey data would impair the data more than would including aberrational, though indisputably accurate, information.

Accordingly, plaintiff's motion for judgment on the agency record is denied and the negative injury determination of the ITC is affirmed.

### JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that this action is dismissed.